54 CCPA

**Application of Wilhelm E. WALLES, William F. Tousignant and Thomas Houtman, Jr.**

**Patent Appeal No. 7400.**

United States Court of Customs and Patent Appeals.

Oct. 6, 1966.

John A. Blair, Detroit, Mich., for appellants.

Clarence W. Moore, Washington, D. C. (Joseph Schimmel, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH, and ALMOND, Judges.

SMITH, Judge.

Appealed claims 1–7 were rejected as "unpatentable over" the claims of a patent to Tousignant et al. This rejection was affirmed by the Board of Appeals. We find the rejection to be improper and therefore reverse the decision of the board.

After an extensive prosecution, the appealed claims stood rejected in view of

the patent previously issued to appellants. While the rejection has been sometimes couched in terms of "double patenting" below, we will first set forth the relationship between the appealed claims and the patent claims before attempting to ascertain the basis for the rejection.

## The Applications

■ The facts are relatively simple and not in dispute. Appellants are the inventors of record in the appealed application [1] and the patent.[2] The appealed application results from a division of a parent case. The patent relied upon for the rejection issued on a continuation-in-part application based on the parent case. The parent case is not involved here. No requirement for restriction was made by the Patent Office between the appealed application and the continuation-in-part application and appellants do not claim any benefit here under 35 U.S.C. § 121. The patent is not prior art under 35 U.S.C. § 103 because it is not entitled to an earlier filing date than the appealed application. It is not prior art under 35 U.S.C. § 102(e) because it was filed by the same inventors.

## The Inventions

The subject matter defined in the patent claims and the appealed claims may be described as follows. *All* of the appealed claims define a resin *per se*.[3] *All* of the patent claims relied on in the rejection define a hair setting composition.[4] The patent claims define a hair

1. Serial No. 798,861, entitled "N-VINYL-X-ALKYL-2-OXAZOLIDINONE POLYMERS," filed March 12, 1959, a division of patent application serial No. 696,317, filed November 14, 1957.

2. Issued August 9, 1960, entitled "Hair Setting Composition Containing a Ring Substituted N-Vinyl-2-Oxazolidinone Polymers," and resulting from patent application serial No. 711,560 filed January 28, 1958 as a continuation-in-part of patent application serial No. 696,317 filed November 14, 1957.

3. Appealed claim 1 is representative of appealed claims 1–6, and reads as follows:
   1. A composition of matter comprising an addition polymer having, as an essential constituent of its polymeric structure, a characterizing plurality of units of:

wherein each X is independently selected from the group consisting of hydrogen and alkyl radicals of from 1 to

about 4 carbon atoms with the limitation that at least one of said X substituents must be an alkyl group, the chain of said polymer terminating with a valance-satisfying unit selected from the group consisting of hydrogen and copolymerized units of another ethylenically unsaturated monomeric material that is copolymerizable by addition polymerization with an N-vinyl-2-oxazolidinone monomer.

Claim 7 covers a copolymer of the same basis monomer with another ethylenically unsaturated monomeric material.

4. Claim 1, quoted by the examiner and the board, is illustrative.
   1. A composition for setting hair comprising a ring substituted N-vinyl-z-exazolidinone polymer of the structural formula:

wherein each X is independently selected from the group consisting of hydrogen and alkyl radicals containing from 1 to about 4 carbon atoms with the limitation that at least one of said substituents is an alkyl radical, and $n$ is a whole number of average value from

setting composition in which the resin of appealed claims 1–6 provides one component.[5]

### The Rejection

The examiner rejected the appealed claims as "unpatentable over" the patent claims. The examiner's answer before the board states:

> The Examiner's position, succinctly stated, is that *a polymer is not patentable over the same polymer dispersed in water.* * * *
>
>     *      *      *      *      *      *
>
> Applicant firmly maintains that [the patent] * * * is not prior art because the application on appeal takes priority to the filing date of [the patent] * * *. That such a position is untenable is clearly shown by In re Ockert, [44 CCPA 1024, 245 F.2d 467, 114 USPQ 330] * * *:
>
> > That if only one inventive concept is present, two patents cannot be granted *regardless of the order in which the applications were filed.* (Italics added)
>
>     *      *      *      *      *      *
>
> In summary the Examiner submits that a clear unequivocal case of double patenting has been made out. * * *

The board in its opinion expressly declined to indicate whether the basis of the rejection was "double patenting" or whether its rejection was based on the patent as prior art. The board found instead that the appealed claims and the patent claims claimed the "same invention," citing 35 U.S.C. § 101; that the claims "differ in scope only;" and that there was no "patentable distinction" between the appealed claims and the patent claims. The board agreed with the examiner's reasoning and added:

> * * * We do not consider such solutions of a soluble polymer to constitute patentably separate and distinct subject matter. * * *
>
> * * * aqueous solutions of the [resin per se] * * * such as those claimed in appellants' patent, would be apparent to the polymer chemist of no more than ordinary knowledge and skill. * * *

A terminal disclaimer as to the appealed claims was filed but was given no legal effect in overcoming the rejection.

The solicitor in his brief, apparently recognizing the contradiction between the board's positions—that the appealed claims and the patent claims claimed the "same invention" but also claimed different inventions which were "patentably indistinct"—argues primarily the broader ground that the patent claims and the appealed claims are "patentably indistinct." However, concerning the terminal disclaimer, the solicitor argues that our decisions in In re Robeson, 331 F.2d 610, 51 CCPA 1271; and In re Kaye, 332 F.2d 816, 51 CCPA 1465, are not controlling because of a difference in "facts." It is reasoned that in *Kaye* and *Robeson* there were "separate inventions" and the claims defined "mutually exclusive subject matter" whereas here the appealed claims and the patent claims differ only in "scope" based upon "the same subject matter." The solicitor's brief [6] concludes:

> * * * the fact that the appeal claims will dominate the patent claims is a sufficiently important difference to make those decisions [*Kaye* and *Robeson*] inapplicable.

Our disposition of this appeal does not require us to resolve this dispute.

---

5. Appellants allege claim 7 covers a copolymer which is not claimed in a hair setting composition. The solicitor states that the appealed claims stand or fall together.

about 10 to about 5000, said polymer being dispersed in a solvent therefor that is selected from the group consisting of water, lower alkyl alcohols containing from 1 to 4 carbon atoms and their mixtures.

6. Our disposition of this appeal does not require reference to our decisions in *Kaye* and *Robeson*. The solicitor's brief was prepared prior to our decision in In re Borah, 354 F.2d 1009, 53 CCPA ——, our most recent decision wherein "dominating" claims and "double patenting" are discussed.

From this background, only briefly commented on, we must determine what is the basis for the rejection. It is readily apparent that the terms "same invention" and "patentably indistinct" provide little assistance in making this determination.

### "Same Invention"

Do the appealed claims and the patent claims define the "same invention?" We would comment at this point that the patent bar was cautioned some 33 years previously by Stringham, in his book entitled *Double Patenting*, 22, 24 (1933), as follows:

* * * The term "same invention" is too broad a term to fit in with the law of double patenting, because of the diversity of meanings of "invention."

* * * * * *

The undue breadth of the term "same invention" has occasioned, at least in part, the difficulty which inventors have had in getting proper protection on more than one related achievement. It is not even approximately true to say that the law does not permit more than one patent on the "same invention." * * *

We think the 1952 Patent Act recognized this warning. The term "invention" as used in the 1952 Patent Act means an "invention or discovery" (35 U.S.C. § 100), or as stated in 35 U.S.C. § 112, it is the "subject matter which the applicant regards as his invention." Before such "invention" may be *patented* it must meet the requirements of 35 U.S.C. §§ 101–103.

■ Whatever meaning the term "invention" may have possessed prior to the 1952 Patent Act, it is clear that the term "invention" now means the *subject matter* which the applicant claims and regards as his "invention." 35 U.S.C. § 112. Accordingly, before two sets of claims may now be said to claim the "same invention," they must *in fact* claim the *same subject matter*.

The failure to conform to the terminology of the 1952 Patent Act has created unnecessary problems in communication and resulted in confusion. Nowhere is this confusion more evident than in the maze of law included in the term "double patenting." We need look no further than the record here for confirmation of that fact.

Do the appealed claims and the patent claims define the same subject matter, that is, the same invention? We think the proper way to determine whether claims in two applications or in an application and a patent define the same subject matter is to determine *independently* precisely what subject matter is defined in the two sets of claims. Where it may be concluded after comparing these independent determinations that the subject matter is in fact the same, the appealed claims are properly rejected in view of the patent claims. 35 U.S.C. § 101. The inquiry is factual and requires that *all* of the subject matter defined by the claim be considered. We may not ignore or discard any portions of the claimed subject matter.

■ Turning to the merits of this appeal, considering the patent claims, the subject matter defined therein is a hair setting composition comprising a resin dispersed in a solvent. Considering the appealed claims, the subject matter defined therein is a resin per se. Comparing the respective subject matter, we must conclude that the subject matter is not the same and therefore the respective claims do not define the "same invention." Numerous decisions of this court support this conclusion.[7]

There is evidence of record that the Patent Office considered that the appealed claims and the patent claims did in fact claim the "same invention" *meaning* the "same subject matter." The reasoning in support thereof is that both sets of claims include the resin. This method of comparing the inventions defined by the claims is improper as it com-

---

7. See In re Allen, 343 F.2d 482, 52 CCPA 1315; In re Heinle, 342 F.2d 1001, 52 CCPA 1164; In re Coleman, 189 F.2d 976, 38 CCPA 1156; In re Sarett, 327 F.2d 1005, 51 CCPA 1180; In re Stanley, 214 F.2d 151, 41 CCPA 956.

pares only a portion of the subject matter defined by the patent claims with the subject matter defined by the appealed claims. Finding that we are dealing here with different inventions, we will now consider whether we are dealing with "patentably indistinct" inventions.

### "Patentably Indistinct Invention"

Considering all of the arguments of the Patent Office and the opinions of the board, we think that claims 1–7 were primarily rejected on the ground that they claim subject matter which is not patentably distinguishable from subject matter claimed in a patent previously issued to appellants. While the board stated at one point the basis for the rejection was that the respective claims defined the "same invention," we think the real objection is that though there are in fact two *inventions*, only one of them is considered to be entitled to a patent.

### The Arguments

The solicitor argues primarily that the appealed claims are "patentably indistinct" from the patent claims. Appellants traverse this argument and also argue that the Patent Office has, in effect, utilized the patent as prior art in rejecting the appealed claims. We will first consider the solicitor's position.

The solicitor in his brief explains how the patent claims and the appealed claims define subject matter which is "patentably indistinct." The explanation involves an interpretation of the patent claims. First, in interpreting the patent claims, we are asked to ignore that portion of the patent claims which states that the composition therein defined is "for setting hair." It is reasoned that portion indicates "only an intended use" which "is of no patentable significance" citing In re Sinex, 309 F.2d 488, 50 CCPA 1004; Kropa v. Robie, 187 F.2d 150, 38 CCPA 858. Second, it is argued that the portion of the patent claims which recites that the polymer is dispersed in "a solvent," as an element of the "composition for setting hair," "that is selected from the group consisting of water, lower alkyl alcohols containing from 1 to 4 carbon atoms and their mixtures" is of no "patentable significance." The solicitor reasons:

> * * * Common sense and common experience indicate that it is common practice to dissolve resinous materials in various solvents to produce coating compositions for various uses, and that the lower alkyl alcohols, such as methyl or ethyl alcohol, are common solvents for that purpose. * * *

Interpreting the patent claims in the above manner, the solicitor concludes:

> * * * Therefore, it is manifest that the claims of the patent and the instant claims depend upon the same essential element for patentability, namely the specific polymeric material. * * *

We do not agree that the patent claims before us can be interpreted in the above manner nor is such a method of analysis proper in determining whether two sets of claims are "patentably indistinct." First, we do not agree that the portion of the patent claims which recite "a composition for setting hair," may be ignored in determining what invention is defined by the patent claims. An examination of the patent specification, including the objects of the invention, the discussion of the prior art, and the examples set forth, reveals that it is directed solely to compositions for setting hair. The only interpretation of the patent claims consistent with the disclosure is that the invention, the subject matter claimed therein, is a hair setting composition. "In our judgment those introductory words give life and meaning" to the claims. Kropa v. Robie, supra, 187 F.2d 150, 38 CCPA 858; In re Sinex, supra, 309 F.2d 488, 50 CCPA 1004.

We also find it improper to ignore the introductory portions of the patent claims for another reason. The record shows that during prosecution in the Patent Office the claims were rejected as being obvious in view of hair setting compositions disclosed in prior art patents. The Patent Office then considered that the patent claims did in fact define a hair setting composition and not a poly-

mer dispersed in a solvent or a resin per se. Appellants successfully argued the distinctions between their claimed subject matter and the cited prior art and the rejection was removed. In view of this circumstance it seems to us that any argument here as to whether the patent claims define a hair setting composition is foreclosed. The arguments here must be consistent with the position taken by the Patent Office in the file of the patent.

Second, we think the solicitor's method of analysis whereby the appealed claims are found to be "patentably indistinct" is incorrect and contrary to well established principles of law. It appears that the analysis is based on a principle of subtraction wherein all that is old (water and lower alcohols) and all that is allegedly obvious (dissolving resins in solvents) may be deleted from the claim. That which remains is the subject matter upon which "patentability" is predicated.

We know of no authority, and the solicitor cites none, where, in a rejection based on double patenting, it is permissible to dissect and discard portions of claims in a search for or an attempt to isolate "the essential element for patentability," whatever that means, common to two sets of claims. Following the solicitor's reasoning, no other patent may issue which includes, as part of the subject matter sought to be patented, the resin per se. Also, we note that this reasoning process looks to what elements in the claims are the *same* and casts out the *differences*. We believe this is also improper.

The solicitor infers, however, on the facts of this case, that all appellants did was to disperse the resin in a solvent. And, apparently for emphasis, the solicitor points out that the patent claims include dispersing the resin in *water*. The solicitor's position apparently endorses the examiner's question:

   \* \* \* where resides patentability when claiming a polymeric product, whose dispersion has been earlier claimed. [ ? ]

As we view the proceedings below, we think the objections and reasoning of the Patent Office are improper. The inquiry below is consistently cast in terms of 35 U.S.C. § 103 which is not permitted in view of the facts of record. The subject matter defined in the appealed claims is treated as prior art and we are asked to determine whether it would be obvious to one of ordinary skill in the art to construct a hair setting composition utilizing the resin as an element. But the patent is not prior art.

Perhaps the real basis for the position here taken by the solicitor is that a patent on the hair setting composition never should have issued. Concerning that invention and patent, the solicitor states in his brief:

   \* \* \* While method claims, such as claims 12 and 13 of the patent might be patentable as a new use under 35 U.S.C. 100(b), the composition itself would be unpatentable. Consequently, it is submitted that only a single patentable concept exists, and that under the established principles two patents cannot be granted.

   The patent is presumed valid, 35 U.S.C. § 282. The gist of the above argument again requires that we utilize the appealed claims as prior art and additionally take judicial notice that the specific resin defined therein may be dispersed in the solvents disclosed in the *patent*. We are to *assume* that the *composition* is *old* in the art and that appellants merely discovered that the composition was *useful* for setting hair.

   In summary, the invention defined by the appealed claims is a resin per se and the invention defined by the patent claims is a hair setting composition. There are no other references before us. As we view the record, appellants discovered a resin which is novel and unobvious. They also discovered that this resin was a useful element in a hair setting composition. The hair setting composition now protected by a patent is not a bar per se to the appealed claims. Based on the facts of record, we know no theory of law concerning "dou-

ble patenting" which permits us to find that the inventions are "patentably indistinct."

Our analysis of the rejection before us is in no way dependent upon the fact that appellants have filed a terminal disclaimer in this case. In view of our disposition of the rejection, the terminal disclaimer is not necessary to overcome the rejection.

The decision of the board is reversed.

Reversed.

WORLEY, C. J., concurs in the result.

MARTIN, Judge (concurring).

As I review the record here, this case is one falling within the principles of In re Robeson, 331 F.2d 610, 51 CCPA 1271, and In re Kaye, 332 F.2d 816, 51 CCPA 1465. I concur in the result reached here solely on the ground that the terminal disclaimers should be given effect, and that they obviate any rejection for double patenting of the obviousness type. I agree with the portion of the majority opinion that holds the inventions here involved are not the same. Compare In re Siu, 222 F.2d 267, 42 CCPA 864.