55 CCPA

**Application of Frederick A. PURDY.**
**Patent Appeal No. 7860.**

United States Court of Customs and Patent Appeals.
May 16, 1968.
Rehearing Denied June 20, 1968.

Smith and Rich, JJ., dissented.

Helge C. Dieserud, James P. Welch, New York City, for appellant.

Joseph Schimmel, Washington, D. C. (Jere W. Sears, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, Justice CLARK,* and Judges RICH, SMITH, and KIRKPATRICK.**

KIRKPATRICK, Judge.

This appeal is from the decision of the Board of Appeals, affirming the examiner's rejection of appellant's claims 1–5 in his application entitled "Controls for Door-Operators".[1] The main issue in the case is double patenting. No claim has been allowed.

The invention relates to a motor operated garage door in which a light cell, in the motor control circuit which operates the motor to open or close the garage door, is activated by the headlight of a vehicle approaching or leaving the garage.

Claim 1 is representative:

1. In a door-operator, a motor for driving the door, and controls for the motor, said controls including a filter for restricting passage through it of light rays having frequencies in the visible daylight region of the radiant spectrum, and for admitting passage through it of light rays having frequencies in a selected non-visible region of the spectrum; and a cell for receiving light rays passed by said filter, said cell restricting flow of electric current when said cell is dark and increasing said flow when said cell is lighted.

Claims 2, 3 and 4 are dependent on claim 1 and provide respectively for the addition of a suitable light source, incandescent light specifically and a filter in the form of a lens. Claim 5 (which is directed specifically to the operation of a garage door by the headlights of a vehicle), in addition to duplicating most of claim 1, provides for baffle partitions in the control capsule to prevent light rays other than those on a horizontal plane with the capsule from reaching the light cell.

While the basis of the examiner's rejection is not entirely clear, the board's affirmance of the rejection was based upon double patenting.

■ Subsequent to the board's decision the appellant filed a terminal disclaimer to avoid the rejection of his application on double patenting. Upon reconsideration, the board refused to consider the disclaimer, pointing out that no good cause was shown why the terminal disclaimer was not filed earlier. We agree with the board in this regard. In re Heyl, 379 F.2d 1018, 54 CCPA 1608 (1967).

Purdy, 3,036,256, issued to the appellant, was copending with the application on appeal here. Its claims include a device for opening, closing and controlling the operation of a garage door by means of light rays from an outside source.

In the patent and the application, the objectives are the same. In both, the chief, if not the only, element of novelty is the means by which light rays reaching the light cell are restricted in order to

* Associate Justice, retired, Supreme Court of the United States, sitting by designation.

** Senior District Judge, Eastern District of Pennsylvania, sitting by designation.

1. Serial No. 104,769, filed March 3, 1961.

prevent ambient light from the sun in daylight or at night from sources of light other than automobile headlights from reaching the cell. Claim 1 of the application is for substantially the same structure as that of the patent except that instead of a series of opaque horizontal baffles in the housing of the capsule, restriction of light rays is accomplished by a filter which admits infrared light but cuts off most if not all the light of frequencies in the visible region of the radiant spectrum. In claim 5 of the application, the baffles are retained with the filter as an added restricting element.

McIlvaine, 2,807,752, relates to a headlight control device for automatically dimming the headlights of a vehicle by light rays from the headlights of another vehicle approaching from the opposite direction. To minimize the effect of ambient light or light from sources other than the lights of the approaching vehicle on the control system, the patent utilizes a filter, positioned in front of a conventional light-sensitive element, which admits only light rays in the infrared range. Since approximately 90% of the light from automobile headlights is in the infrared range, very little of this light is excluded by the filter, while ambient light, having wave lengths for the most part outside the infrared region, is cut off, if not entirely, at least to a large extent.

The answer to the question of double patenting depends upon whether there is any patentable distinction between the claims of the application and those of the applicant's patent or, put another way, whether the invention claimed in the application is obvious or unobvious over what was claimed in the patent.

■ Our conclusion is that the claims on appeal are directed to obvious subject matter when considering the invention claimed in the patent in connection with McIlvaine. Having learned from McIlvaine that a device intended to be operated by the headlights of an approaching automobile could be made to work efficiently by utilizing a filter (which cuts off all or most of the light coming to the device from sources other than automobile headlights), the step of including in an apparatus to operate a motorized garage door, a filter in place of or in addition to the baffles of the Purdy patent was a step which must have been obvious to any person of ordinary skill in the art involved. See In re Simmons, 312 F.2d 821, 50 CCPA 990 (1963).

■ It is well established that in a double patenting situation, prior art may be considered in order to determine whether the application claims a mere obvious variation of the patented invention but, as pointed out by Judge Rich in a concurring opinion in In re Zickendraht, 319 F.2d 225, 50 CCPA 1529 (1963), the ground of rejection for double patenting should be kept separate from Section 103 as a ground of rejection.

We, therefore, affirm the decision of the board on the ground of double patenting.

Affirmed.

SMITH, Judge (dissenting, with whom RICH, J., joins).

My disagreement with the opinion of the majority starts with my inability to agree that the complex issues presented on this record can be accurately stated as being a "main issue" of "double patenting."

The record shows that the initial rejection under 35 U.S.C. § 103, which was made by the examiner, was affirmed by the board, and is defended here by the solicitor as a proper rejection. This rejection cannot be supported.

The application which forms the basis of the present appeal was filed on *March 3, 1961* in the name of Frederick A. Purdy as the sole inventor. The "Purdy" patent which is relied upon to support the rejection under 35 U.S.C. § 103 is in the name of the same inventor who is the appellant here. That patent *issued* May 22, 1962 on an application *filed* March 12, 1959. Thus, it was *copending* with the application here on appeal.

The rejection under 35 U.S.C. § 103 was specifically set forth by the examiner under date of December 9, 1963. He stated:

Claims 1 to 5 are rejected, as understood, as unpatentable over Purdy in view of McIlvaine and McKnight. *Purdy discloses and claims the device as claimed in this application* with the exception of a filter lens in front of the baffle to admit only infrared radiation. McIlvaine teaches the use of a filter in front of a baffle to permit only infrared radiation from reaching the detector. It *would not involve invention* [sic: patentable invention] to use a filter as taught by McIlvaine *in the Purdy device.* In fact, *it would be obvious to anyone experienced in the art to use such a filter* if desired especially since McIlvaine teaches the desirability of using a filter with the baffle. Likewise the use of an optical element selectively transmissive to infrared radiation would not be invention [sic: patentable invention] because McKnight teaches that lenses 18 and 20 are transmissive to infrared radiation. Elements 18 and 20 are opaque to visible radiations. In view of the teachings of McIlvaine and McKnight it would be obvious to anyone experienced in the art to use a lens filter *in the Purdy device.* [Emphasis added.]

Thus, it is clear that the examiner recognized that the essential difference between Purdy's present application and Purdy's patent was to be found in the use of a filter lens. The applicant initially treated this rejection as being based on obviousness under section 103 and responded to the examiner's position *as if* the Purdy patent were "prior art" within the meaning of 35 U.S.C. § 103. My view is that the Purdy patent is not and cannot become "prior art" under section 103 under the circumstances of this case. See, e. g., In re Braithwaite, 379 F.2d 594, 601, 54 CCPA 1589, 1599 (concurring opinion) (1967); In re Faust, 378 F.2d 966, 54 CCPA 1459 (1967); In re Walles, 366 F.2d 786, 54 CCPA 710

(1966); and In re Bowers, 359 F.2d 886, 53 CCPA 1590 (1966).

The examiner, however, repeated the same error in the final rejection stating that "[c]laims 1 to 5 again are rejected as unpatentable over Purdy in view of McIlvaine and McKnight." He specifically referred to what Purdy "discloses" and concluded that:

* * * It *would be obvious* to anyone experienced in the art with the teachings of Purdy and McIlvaine before him to use a filter as taught by McIlvaine *in the Purdy device* if desired. Further, the use of a special form of filter recited in claim 4 in the form of a lens would be an obvious expedient if desired because McKnight teaches the use of a lense [sic] filter in directing infrared energy to a detector. It *would be obvious* to anyone experienced in the art to apply the teachings of McIlvaine and McKnight *to the Purdy device.* [Emphasis added.]

On the record before the court, it appears that what the majority terms the "main issue" of "double patenting" did not emerge until stated by appellant in his brief on appeal before the board. There, appellant correctly argued that the specification of his own patent issued on a copending application is not "prior art" as to his later application within the meaning of 35 U.S.C. § 103, citing In re Sarett, 327 F.2d 1005, 51 CCPA 1180 (1964) and In re Robeson, 331 F.2d 610, 51 CCPA 1271 (1964). Specifically the argument was made:

* * * The principal reference upon which the Examiner relies (Purdy 3,036,256) is, by law, not available as prior art. The sole question then is whether the invention recited in the claims on appeal is taught or suggested by the headlight dimmer switch control of McIlvaine. * * *

In addition to arguments directed to the issues arising under 35 U.S.C. § 103, appellant added:

It is respectfully submitted that the invention recited in the *claims on ap-*

*peal* is much more than an obvious modification or obvious improvement of the invention *claimed in the copending 3,036,256 patent.* This is the only test which can be properly applied here and the Examiner's rejection of claims 1 to 5 should be reversed. [Emphasis added.]

In order to be safe, should the board decide to consider the rejection under 103 as being essentially a rejection for "double patenting," appellant proffered a terminal disclaimer, stating:

Should the Board fail to reverse the Examiner and hold that the *claims on appeal* are obvious modifications or obvious improvements of the *claims* in appellant's Copending 3,036,256 patent, appellant will file a terminal disclaimer of the claims on appeal so that the enforceability of these claims will terminate concurrent with the claims of copending patent 3,036,256. * * *

[Emphasis added.]

The examiner, in his Answer, continued to articulate his rejection based on section 103 of the statute, but, in addition, less clearly enunciated his position as to a rejection on "double patenting." As to the former issue, it is sufficient to note that his position was largely a restatement of his earlier rejection. The Answer *specifically* twice referred to the rejection as arising "under 35 U.S.C. 103", and referred to what Purdy "discloses and claims." The following excerpts from the examiner's Answer are significant:

Claims 1, 2, 3 and 5 are rejected under 35 U.S.C. 103 as unpatentable over Purdy in view of McIlvaine. * * *

The Purdy patent *discloses and claims* the combination recited in claims 1, 2, 3 and 5 except for the use of a filter. The use of a filter to limit the wavelengths of light to a part of the spectrum used by Purdy would be an obvious expedient to anyone skilled in the art since McIlvaine teaches the use of a filter transparent only to infrared light and used in a detector control assembly containing a louver panel to limit the direction of radiation reaching the detector. * * * [Emphasis added.]

Claim 4 is rejected under 35 U.S.C. 103 as unpatentable over Purdy in view of McIlvaine and further in view of McKnight who teaches that the use of arsenic trisulphide as a lens which is transparent to infrared radiation is well known in the art. * * *

The examiner also used terminology which ultimately was viewed as a rejection for "double patenting." However, as will be noted, the examiner used this argument at best as a make-weight for *rebutting* the appellant's position and did not *assert* it as *another rejection* on that ground. Thus, the examiner stated:

Applicant argues that the use of the Purdy patent as prior art is improper * * *. The Purdy patent discloses and claims essentially the same invention urged in this case. There is no mention in the patent of using a filter in front of baffles to restrict the wavelengths of light to infrared radiation. This has been shown to be an obvious expedient in the art. What applicant is now claiming appears to be an obvious expedient or obvious addition to the invention claimed in his patent. The Purdy patent is used for this purpose. The allowance of claims such as claims 1 to 5 in this case would have the effect of extending the monopoly on Patent No. 3,036,256 and granting applicant additional patent coverage for elements well known in the art. Claims 1 to 5 in this case appear to be a mere coloration of the coverage obtained in the earlier patent.

The board found both a "double patenting" rejection and a statutory rejection under 35 U.S.C. § 103 in the examiner's vague statements. After restating the examiner's position, the board noted appellant's argument that the teachings of Purdy "are not prior art with reference to the claims of the copending application," and concluded:

We have carefully considered appellant's arguments but find no reversible

error in the Examiner's rejection of the appealed claims as being unpatentable over the references. * * *

To support this position the board used language better suited to explaining a "double patenting" rejection than in justifying a rejection under 35 U.S.C. § 103.

It seems to us that a person skilled in the art having appellant's problem as well as the *structure claimed in the Purdy patent before him* would be taught by the McIlvaine patent to use an infrared filter in connection with *subject matter claimed* in the Purdy patent. [Emphasis added.]

It is axiomatic that before two patents are granted there must be two inventions present and the Court has held in the decision cited below that claims of a second copending application must patentably define over the claimed subject matter of appellant's patent. In re Zickendraht et al., * * * 50 CCPA 1529 [319 F.2d 225, 138 USPQ 22 (1963)] and decisions cited therein.

In a Request for Reconsideration, appellant asserted the impropriety of thus utilizing the Purdy patent as "prior art" under 35 U.S.C. § 103. The board responded:

As pointed out by the Court of Customs and Patent Appeals in In re Ornitz, [52 CCPA 1467, 347 F.2d 586] 146 USPQ 38, [1965] this question [of "double patenting"] has been ruled on in several cases, including In re Zickendraht et al., 50 CCPA 1529; * * * 319 F.(2d) 25 [225]; 138 USPQ 22 [1963]. Also, as pointed out by the Court, the fact that prior art is considered in connection with the patent claims does not convert a double patenting rejection into a simple Section 103 rejection so as to exclude consideration of the claims of appellant's copending patent.

It is our opinion it would be obvious to use the infrared filter of McIlvaine in connection with the subject matter claimed in the Purdy patent. Hence the *appealed claims* do not represent a patentable difference *over the claims* of the patent. [Emphasis added.]

It is clear that the rejection which uses the Purdy patent as "prior art" under 35 U.S.C. § 103 may not be sustained since that patent does not enjoy the limited statutory status of "prior art." See In re Knohl, 386 F.2d 476, 55 CCPA —— (1967); In re Braithwaite, 379 F.2d 594, 54 CCPA 1589 (1967); In re Robeson, supra; In re Kaye, 332 F.2d 816, 51 CCPA 1465 (1964); In re Sarett, supra; In re Zickendraht, 319 F.2d 225, 229, 50 CCPA 1529, 1533 (concurring opinion, Rich, J.).

The solicitor apparently acknowledges that the Purdy patent is not "prior art" within the meaning of section 103 of the statute, but still asserts that that rejection is proper because of certain "admissions" as to the prior state of the art which he purports to find in appellant's patent. The solicitor states:

* * * His patent disclosure includes admissions as to the prior state of the art. Certainly those portions of his patent disclosure are available as evidence of prior art under 35 U.S.C. 103, and should suffice here in conjunction with McIlvaine.

The difficulty with this position, however, is that the Patent Office position has never been so stated. Thus appellant has been given no opportunity to be heard on such a ground of rejection. Minimal considerations of due process require that an applicant be heard on such a rejection. 35 U.S.C. § 132. It was the clear intent of Congress that, before an applicant be deprived of his *right* to a patent, 35 U.S.C. § 101, requisite notice be given to the end that he might determine the advisability of continuing the prosecution of the application, 35 U.S.C. § 132. At the very least, it seems to me, he should have been given the op-

portunity to contest before the agency itself the position of the agency as so stated.[1] For this reason, and for reasons which will become clear from the following discussion, it seems to me this appeal should be remanded to the Patent Office for proceedings consistent herewith.

With respect to the rejection based upon the judicial doctrine of "double patenting," I do not agree that such a rejection should be affirmed here. It is clear that the *same* invention is not being claimed twice, i. e., once in the Purdy patent and a second time in the Purdy application on appeal. This is clear from the very nature of the statements of the rejection, for despite the confusion in the articulation of the rejection by the examiner, it admits of only one conclusion, i. e., that the same invention is not being claimed; hence the "double patenting" rejection, if one exists, is what has been termed of the "obviousness-type." Stated more succinctly, the Patent Office position is that the *differences* between *claims* here on appeal and the *claims* in the Purdy patent are such that the invention claimed in the appealed *claims* is obvious in view of the claims of the Purdy patent. It is in this type of situation in which terminal disclaimers may be effective to avoid the rejection. In re

Braithwaite, supra; In re Faust, supra; In re Kaye, supra; and In re Robeson, supra.

I am unable to understand why neither the majority nor the board refers to appellant's proffer of a terminal disclaimer made at a time before the decision of the board but made contingent because, as previously noted, it was doubtful whether the examiner ever, in fact, intended that rejection as a "double patenting rejection."

Thus, in my view, this appeal should be remanded for consideration of the effect of applicant's proffer of the terminal disclaimer under the present facts. In so remanding the case, I would do so because I believe that this entire matter falls within the purview of our decisions in In re Tanner, 343 F.2d 1018, 52 CCPA 1307 (1965); and In re Dunn, 349 F.2d 433, 52 CCPA 1760 (1965). As noted in In re Heyl, 379 F.2d 1018, 54 CCPA 1608 (1967), those decisions were * * "exceptional actions, taken in the interest of justice * * *." In my view this appeal requires such an action.

I have noted with interest the recent decision in Ex parte Fertig, 155 USPQ 475 (P.O.Bd.App.1967). There, under facts similar to those here, the board recommended that the claims of the ap-

1. The pertinent portion of 35 U.S.C. § 132 provides:

Whenever, on examination, any claim for a patent is rejected, or any objection or requirement made, the Commissioner shall notify the applicant thereof, stating the reasons for such rejection, or objection or requirement, together with such information and references as may be useful in judging of the propriety of continuing the prosecution of his application; and if after receiving such notice, the applicant persists in his claim for a patent, with or without amendment, the application shall be reexamined. * * *

As noted above, the final rejection was based on 35 U.S.C. § 103. In seeking an appeal, i. e., judging the propriety of continuing the prosecution of his application, the appellant was on a firm base. It seems to me that when the basis for the rejection allegedly shifted to include another ground of rejection, i. e., double

patenting, the minimal requirements of this statute were not met.

The comments of this court in In re Osweiler, 346 F.2d 617, 52 CCPA 1427, apply as well to the solicitor. There, we noted that the general statement that arguments not urged below will not be considered for the first time on appeal is "far too broad." The real question should be, as we there noted, whether the new argument is such as to raise new issues. Notwithstanding the fact that counsel for the solicitor and the appellant have provided the court with supplemental memoranda directed to the propriety of utilizing "admissions" of the "prior art" in patents which are not "prior art" under the statute, I think that the position taken here by the solicitor raises a new issue which requires more definite framing below. Only then can this court, in my view, properly consider that argument.

pellant's application there be considered allowable upon the presentation of a proper terminal disclaimer. There, as here, appellant apparently in his principal brief before the board, offered to execute and file a terminal disclaimer in order to prevent the charge of extending the patent monopoly. There, the examiner recognized the offer, but refused it on the ground the claims did not amount to a "distinct variation" over the patent claims. The board disagreed, stating that the appealed claims were "distinct" and "without overlap" and thus made the recommendation.

Since 35 U.S.C. § 253 makes no mention of a time limit for filing a terminal disclaimer, and since the proffer of such a disclaimer was before the board prior to its decision, the above practice seems to me to be particularly appropriate in view of the facts here.

For the foregoing reasons, I would remand the appeal to the Patent Office for further proceedings consistent with this opinion.